## WARRINGTON v. COMBS.

## BRANTINGHAM v. COMBS.

## BRANTINGHAM v. COMBS.

PATENTS; INTERFERENCE; PLEADING; REDUCTION TO PRACTICE.

1. The matter of permitting a party in interference to amend his preliminary statement rests within the sound discretion of the Patent Office tribunals, whose action will not be disturbed by this court where such discretion has not been abused.

2. Actual reduction to practice held in an interference proceeding to have been established as claimed by the appellee.

Patent Appeals Nos. 880, 881, and 882. Submitted January 14, 1914. Decided March 2, 1914.

HEARING on appeals from decisions of the Commissioner of Patents in interference proceedings. *Affirmed.*

The COURT in the opinion stated the facts as follows:

The foregoing interferences relate to improvements in gyratory structures or sifters primarily intended for flour sifters, and have been argued and considered together.

The first is between Jesse Warrington, on an application filed February 11, 1907, on which a patent issued July 2, 1907; and George W. Combs on an application filed September 24, 1907. The issue is defined in the following ten counts:

"1. In combination, a suspended body, a shaft arranged centrally therein and weighted to produce a gyratory movement,

a pin set eccentrically to said shaft and extending downwardly and resting in a step bearing whereby the weight of said shaft and its weights are supported, a fixedly mounted driver surrounding the axis of rotation, and a bearing in which said driver is mounted adjacent to the step-bearing carrying the pin.

"2. In combination, a suspended structure arranged to have a gyratory movement, a driver therefor, a shaft mounted therein, a pin set eccentric to said shaft, a step bearing for said pin carrying the weight thereof and of the shaft, said step bearing being free to move over the surface of the support on which it rests.

"3. In combination, a suspended structure arranged to have a gyratory movement, a driver therefor, a shaft mounted in bearings engaging with said suspended structure, a pin set eccentric to said shaft, and a chamber adapted to contain a lubricant and which is larger than said pin into which the lower end of said pin enters and upon the bottom of which it is supported and adapted to move.

"4. In combination, a suspended structure arranged to have a gyratory movement, a driver therefor, a shaft thereto, a pin whose axial line is different from that of the shaft but operatively connected therewith, and a support upon which said pin rests having a friction surface over which said pin may move, whereby said pin and the parts carried thereby are frictionally restrained and the weight thereof supported.

"5. In combination, a suspended structure arranged to have a gyratory movement, a driver therefor, a shaft thereto, a pin whose axial line is different from that of the shaft but operatively connected therewith, a support upon which said pin rests, having a friction surface over which said pin may move, and a bearing-block interposed between said pin and the surface of said support.

"6. In combination, a suspended structure arranged to have a gyratory movement, a driver therefor, a shaft thereto, a pin whose axial line is different from that of the shaft but operatively connected therewith, and a support upon which said pin rests having a friction surface over which said pin may move,

said surface being surrounded by a wall thus forming also a lubricant chamber.

"7. In combination, a suspended structure arranged to have a gyratory movement, a driver therefor, a shaft thereto, a pin set eccentric to said shaft, and frictional means coacting with the eccentric pin for restraining abnormal throws of the suspended structure during gyration.

"8. In combination, a suspended structure arranged to have a gyratory movement, a driver therefor, a shaft mounted in bearings engaging with said suspended structure, a pin whose axial line is different from that of the shaft but operatively connected therewith, and a frictional means supporting the weight of the pin and parts carried thereby and coacting with said pin for restraining abnormal throw of the structure during gyration.

"9. In combination, a suspended structure, a fixedly mounted driver surrounding the axis of movement, a shaft in said structure, a pin whose axial line is different from that of the shaft but operatively connected therewith, a support upon which said pin rests, and a frictional device coacting with said pin for restraining abnormal throw of the structure during gyration.

"10. The combination, in a gyratory sifter, of a sifter body, means whereby the same is suspended, bearings arranged centrally of said body, an eccentrically weighted shaft mounted in said bearings, an eccentric pin on said shaft, a step-bearing supporting said pin and through it said weighted shaft, a fixedly mounted driver arranged adjacent thereto, and surrounding the axis of movement, and a yielding connection between said driver and said shaft."

The Examiner of Interferences, holding that Combs had failed to overcome the heavy burden of proof imposed upon him by reason of the patent to Warrington, awarded priority to the latter in all the counts of the issue. He also found that Combs had shown no conception, prior to his filing date, of the use of unbalancing or eccentric weights for producing a gyratory movement as specified in counts 1 and 10.

On appeal to the Examiners in Chief this decision was af-

firmed as to counts 1 and 10, and reversed as to counts 2 to 9, inclusive. Combs did not appeal from this decision. Warrington appealed and the decision was affirmed by the Commissioner.

The next interference declared between the application of Combs, of September 24, 1907, and that of Brantingham, filed January 28, 1907, contained an issue of six counts, as follows:

"1. In combination, a suspended structure, suspending means therefor, a support independent of said structure, said support consisting of individually rigid elements, a laterally movable, vertically positioned shaft engaging said structure and said support, a weight connected to said shaft whereby it is given a tendency when in motion to cause the structure to travel in a gyratory path, a fixed bearing surrounding the axis of movement of said shaft, a driver engaging in said bearing, and yielding connections independent of the suspending means between said driver and said shaft whereby the latter may be driven from the former notwithstanding the difference between the axis of rotation of the driver and the axis of gyration of the latter.

"2. In combination, a suspended body, a bearing member arranged centrally thereof, a weight mounted to produce a gyratory movement, a laterally movable rotatable stem engaging said bearing member, a step bearing for the stem whereby the weight of the stem and gyratory weight are supported, a fixedly mounted driver surrounding the axis of rotation of the stem, and a bearing in which said driver is mounted.

"3. In combination, a suspended body, a bearing member arranged centrally thereof, a weight to produce a gyratory movement, a laterally movable rotatable stem engaging said bearing member, a step bearing for the stem whereby the weight of the stem and gyrator weight are supported, a driver having a central opening through which said stem extends but free of contact therewith, and a bearing in which said driver is mounted.

"4. In combination, a suspended structure arranged to have a gyratory movement, a stationary bearing, a driver mounted thereby, said driver having a central opening, laterally movable rotatable means including a shaft engaging the suspended

structure, said rotatable means extending through the opening in the driver, and a step bearing for said rotatable means.

"5. In combination, a suspended structure arranged to have a gyratory movement, a stationary bearing, a driver mounted thereby, said driver having a central opening, laterally movable rotatable means including a shaft for actuating the suspended structure, said rotatable means extending through the opening in the driver, and a step bearing for said rotatable means.

"6. The combination, in a gyratory sifter of a sifted body, means whereby the same is suspended, a bearing member arranged centrally of said body, laterally movable rotatable means coacting with said bearing including an eccentric weight and a movable shaft, a step bearing supporting said rotatable means, and its eccentric weight, a fixedly mounted driver arranged adjacent thereto and surrounding the axis of movement of the rotatable means, and yielding connection between said driver and said rotatable means."

The Examiner of Interferences held that Combs, having failed to show any conception of the use of unbalancing or eccentric weights as defined in counts 1, 2, 3, and 6, must be restricted to his filing date both for conception and reduction to practice of the invention as defined in said counts. He found that as to counts 4 and 5 Combs conceived the invention as early as October 31, 1906, while Brantingham was given the date of December 8, 1906. But holding that Combs was not exercising diligence when Brantingham entered the field, he was overcome by the filing of the application of the latter, on January 28, 1907. Combs was denied actual reduction to practice as claimed by him. Priority was, therefore, awarded Brantingham on all of the counts.

On appeal by Combs, the Examiners in Chief affirmed the decision in favor of Brantingham. Combs appealed to the Commissioner from the decision as to counts 4 and 5, who disagreed with the Examiners in Chief as to Brantingham's reduction to practice of the invention of these counts in February, 1906, because they were mistaken in the view that the machine

of that date embodied the issue of these counts. He held also that Combs had reduced to practice in October or November of 1906. Consequently he reversed the decision as to those counts.

The last interference embraced the applications of Combs and Warrington, respectively, and that of Brantingham also, and the issue is in the following counts:

"1. In combination, a suspended structure, suspending means therefor, a shaft mounted in said structure, a fixedly mounted driver surrounding the axis of movement, a support for said shaft independent of said structure and said driver, and a yielding connection independent of the suspending means between the suspended structure and the driver whereby said structure is permitted a gyratory movement in operation.

"2. In combination, a suspended structure carrying a vertically positioned shaft, weights connected with said shaft whereby it is given a tendency when in motion to travel in a gyratory path, a driver mounted in a fixed bearing adjacent to the end of said shaft and surrounding the axis of movement, a support for the shaft independent of the driver and yielding connections independent of the suspending means between said driver and said shaft whereby the latter may be driven from the former notwithstanding the difference between the axis of rotation of the driver and the axis of gyration of the latter.

"3. In combination, a suspended body, suspending devices therefor, means for giving said body a gyratory movement, a stationary driver, a shaft to said suspended body, a support for said shaft independent of said driver, and a yielding connection between said driver and the shaft of said suspended body whereby they are engaged for coincident rotation but permitting a relative movement equal to the distance between the axis of rotation and the axis of gyration."

The argument of the Examiner of Interferences by which his conclusions in each case were chiefly controlled is made in this case. Warrington's preliminary statement in each case is vague, and under it he was limited to his filing date for reduction to practice. His assignee, who conducted the proceedings, moved to amend, attributing the want of specification of dates to the

mental condition of Warrington, whose memory, it was alleged, had become impaired by failing health in 1907. Testimony on the point was taken by both sides and is in conflict. The leave to amend was denied. Combs was denied his claim of reduction to practice through his machines, exhibits X, Y, and Z. He was therefore limited to his filing date and postponed to both Warrington and Brantingham. Warrington's limitation postponed him to Brantingham, who was awarded December 8, 1906, as his date of conception. Brantingham was denied actual reduction to practice as claimed, and confined to his filing date which, however, antedated Warrington by thirteen or fourteen days. Brantingham was, therefore, awarded priority on all counts. The objection to Combs' actual reduction to practice was based largely on the leading questions addressed to his witnesses. That many of the questions were objectionable there is no doubt; but Combs is not alone subject to this criticism; many such questions were asked by his opponents throughout the taking of testimony. Nor, as pointed out by the Examiners in Chief and the Commissioner, was he compelled to rely upon such testimony alone. The Examiners in Chief held, on appeal, that Combs' proofs did not show the practice of eccentric weights called for in count 2, and proceeded to discuss counts 1 and 3. They held that Combs had conceived the invention as early as the fall of 1903, and that he had actually reduced it to practice in the spring of 1906 in Exhibit X machine; and in October, 1906, in his Exhibit Z machine. They found also that some machines made after those exhibits had passed into commercial use in 1906, and early in 1907. They reversed the Examiner of Interferences as to the counts 1 and 3 and awarded priority to Combs. As to count 2, they affirmed. Combs took no appeal. Brantingham appealed to the Commissioner from the award of counts 1 and 3 to Combs. The Commissioner found that Brantingham's sketches of July, 1903, latter part of 1904, and February, 1906, respectively, indicate in a general way all the main elements of a gyratory sifter, but fail to show the subject-matter of the counts, because they lack "a support for said shaft independent of said driver," called for there-

in; and some other necessary elements. He also found that Combs was in possession of the invention of the issue in 1903 and 1904; that he built three full-sized machines embodying the invention during March, June, and October, 1906. These are Exhibits X, Y, and Z. He found, also, that X and Z were fully tested, and found satisfactory, and have passed into commercial use. He, therefore, affirmed the decision appealed from.

From each decision appeals have been prosecuted by Warrington and Brantingham.

*Mr. George E. Kirk* and *Mr. Arthur M. Hood* for the appellant.

*Mr. Edward T. Fenwick, Mr. L. L. Morrill,* and *Mr. F. G. Fischer* for the appellees.

*Mr. Chief Justice* SHEPARD delivered the opinion of the Court:

Whether leave should have been granted Warrington to amend his preliminary statement was a matter within the sound discretion of the tribunals below. Considering all the circumstances, the delay in the matter, and the evidence relating to the mental condition of Warrington, that discretion seems to have been properly exercised; clearly there was no abuse of it.

The point in the controversy upon which the claim of Combs to priority chiefly turns is whether he actually reduced the invention to practice in his Exhibit X and Z machines. The Examiner of Interferences' conclusion as to this was denied in turn by the Examiners in Chief and the Commissioner. The evidence on both sides has been reviewed in the several decisions quite fully, and the reasoning in support of the opposing view has been well presented. Our examination of the evidence on all points convinces us that the Commissioner was right.

We think it unnecessary to again review the evidence.

The decision appealed from in each case will be affirmed. It is so ordered; and that this decision be certified to the Commissioner of Patents, as required by law.        *Affirmed.*